[Civ. No. 1919.   Second Appellate District.—June 26, 1917.]

## CORA SAXON, Respondent, v. BUCKEYE MANUFACTURING COMPANY (a Corporation), Appellant.

CONTRACT — AGREEMENT TO LOAN MONEY — MORTGAGE ON PURCHASED AUTOMOBILE—DEFECTIVE EXECUTION—RECOVERY OF MONEY.—Where an automobile manufacturing company, desiring to make the sale of a motor truck, agreed with the plaintiff that if she would advance a certain sum of money to the proposed purchaser to enable him to make the purchase, the plaintiff should be protected by a first chattel mortgage on the truck, which she did, and the mortgage on the truck was executed informally and unacknowledged, the plaintiff had the right to refuse to accept the mortgage and to insist on the

correction of its execution, and where the correction was not made, the plaintiff was entitled to recover the money advanced from the company.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Sidney N. Reeve, Judge.

The facts are stated in the opinion of the court.

Edward M. Selby, for Appellant.

Leaf & Pugh, for Respondent.

JAMES, J.—Appeal by the defendant from a judgment entered in accordance with the prayer of plaintiff's complaint, and from an order made in the trial court denying to the defendant a new trial. The judgment-roll is included in the transcript and the evidence heard at the trial is presented by bill of exceptions.

Plaintiff by this suit sought to recover the sum of five hundred dollars, with interest, alleged to have been deposited with the defendant under the terms of a certain agreement. The cause of action is in the main stated in paragraph II of plaintiff's complaint, which paragraph reads as follows:

"That on the 26th day of July, 1912, in the City of Los Angeles, County of Los Angeles, State of California, plaintiff deposited in the hands of defendant the sum of five hundred dollars ($500.00) and authorized defendant to lend said five hundred dollars ($500.00) to one Ray S. Carrothers upon the defendant procuring and delivering to plaintiff the promissory note of said Ray S. Carrothers, executed to plaintiff, for five hundred dollars ($500.00), payable six (6) months from the date of the execution thereof, and secured by a chattel mortgage on a certain automobile truck that defendant informed plaintiff was to be purchased by said Ray S. Carrothers from defendant; and defendant agreed to make said loan in the manner above stated, and not otherwise, and agreed to return said sum of five hundred dollars ($500.00) to plaintiff within a reasonable time after July 26, 1912, if said loan was not made in the manner above stated."

It is claimed, in the first place, that the evidence is insufficient to support the findings made by the trial judge. The

evidence showed that in 1912 the plaintiff, having thereto-
fore entered into a contract with the defendant by which the
plaintiff acquired the right to market automobiles manufac-
tured by defendant within certain territory in the state of
California, desired to bring to an end her business relations
with defendant. The full time fixed by the agreement be-
tween the parties had not then expired and defendant sent to
California its agent for the purpose of endeavoring to adjust
matters with the plaintiff so that her desire to be released
from her contract might be accomplished. This agent, deal-
ing mainly with the attorney for the plaintiff, arrived at an
agreement which was reduced to writing. This agreement
embodied a number of provisions which related to the dis-
position to be made of automobiles and trucks theretofore
ordered from the defendant by the plaintiff. The cause of
action here sued upon arose by reason of the claim of the
plaintiff that the defendant had failed to comply with cer-
tain conditions made respecting the matter set forth in
paragraph 7 of the settlement agreement. We quote that
paragraph: "7. Inasmuch as said Buckeye Manufacturing
Company is disposing of or is intending to dispose of the
truck included in said carload above mentioned, Mrs. Saxon
agrees to make a loan to the purchaser of said truck, Mr. Ray
S. Carrothers, in the sum of $500.00, so that said Carrothers
can pay to said Buckeye Manufacturing Company the balance
of the purchase price of said truck in full, said loan to be
represented by a promissory note made by said Carrothers,
due six months after its date, bearing interest at 7% per an-
num from its date, which promissory note shall be secured by
chattel mortgage on said truck, executed by said Carrothers
in the form already agreed upon and already executed by said
Carrothers." The evidence showed that as to the particular
truck mentioned in the foregoing, the defendant company de-
sired to complete the sale thereof to Carrothers, but were not
prepared to do so until one thousand one hundred dollars, in
addition to the five hundred dollars to be advanced by the
plaintiff, was paid on account of the purchase price. On
July 26, 1912, the plaintiff delivered her check for five hun-
dred dollars to the defendant and the following receipt was
issued to her:

"Received from Mrs. Cora Saxon check to the order of
Buckeye Mfg. Company for five hundred dollars, being the

amount agreed to be loaned by Mrs. Saxon to Ray S. Car-
rothers, for six (6) months at 7 per cent interest, on note to
be secured by chattel mortgage on Lambert truck, in accord-
ance with agreement dated July 24, 1912. In case said loan
is not made to Carrothers, said check for $500.00 shall be re-
turned to Mrs. Saxon.

"(Signed)   THE BUCKEYE MFG. CO.

"J. E. BURKE."

At the time this receipt was issued the defendant had not
completed the deal with Carrothers, in that Carrothers had
not yet secured the one thousand one hundred dollars which
he was to pay in cash and which he was arranging to borrow
on the security of some real estate. Meanwhile plaintiff's
attorney, being consulted by the agent of defendant, had fur-
nished to the defendant's agent a form of chattel mortgage
to be executed by Carrothers. The testimony of the attorney
for the plaintiff who acted in the negotiations with defend-
ant's agent was to the effect that he did not superintend the
further making of the chattel mortgage in any way; that he
prepared the form and delivered it to defendant's agent that
the latter might have it executed in such a way as to furnish
to the plaintiff the security for five hundred dollars in ac-
cordance with the agreement hereinbefore referred to. There
was some conflict in the testimony upon this point, the defend-
ant's agent claiming that the attorney did supervise and
direct the further attaching of the signature of Carrothers to
the document; but in view of the conflict we must assume the
correctness of the testimony introduced by the plaintiff on all
points. It does appear that after the plaintiff had delivered
her check for five hundred dollars to the defendant and the
form of chattel mortgage had been placed in defendant's
hands for execution by Carrothers, the latter document was
not delivered to the plaintiff or her attorney until Septem-
ber of the same year. At that time defendant wrote to the
plaintiff:

"We are inclosing you herewith the Ray S. Carrothers mort-
gage notes, Mr. Carrothers having just sent in the remainder
of his settlement on the truck. We are sending you this in
care of Mr. Bacheler and presume it will be necessary for
you to have the same recorded at once.

"Yours very truly,

"THE BUCKEYE MFG. COMPANY,

"J. E. BURKE."

Upon examining the documents forwarded by defendant with the letter above quoted, the attorney found that Carrothers had signed on the face of the mortgage the note set out therein, that he had not attached his signature in the usual place at the foot of the mortgage at all, and that the only other place where his signature appeared was as attached to the affidavit at the foot of the mortgage, made in accordance with the provisions of section 2957 of the Civil Code. While that matter has not been specially adverted to in the briefs, we also note that the document did not have attached at that time any acknowledgment by the mortgagor which would entitle it to be recorded. Immediately upon receiving the letter and the inclosures from the defendant, plaintiff's attorney wrote to defendant, calling attention to the fact that the note of Carrothers should have been executed in separate form from the mortgage, and that Carrothers, in order to properly attest the mortgage, should have signed it in the usual place. He further called attention to the fact that the mortgagee had not joined in the affidavit required. The plaintiff at that time not being a resident of California, her attorney gave in this letter her address, which was at a place in Colorado. In this letter, which was dated September 10th, the attorney stated to defendant: "I do not think you are authorized to use Mrs. Saxon's money until a duly executed mortgage has been recorded here and the note referred to in the mortgage delivered to Mrs. Saxon." The mortgage was returned to the defendant and the defendant forwarded it to Mrs. Saxon in Colorado, and she signed the affidavit, which had previously been signed by Carrothers. The mortgage was still without the signature of Carrothers affixed in the usual place; and there was no separate note aside from that appearing in the mortgage itself. On September 16th defendant wrote to plaintiff's attorney in Los Angeles: "Replying to yours, we have to-day sent the mortgage to Mrs. Saxon at Colorado Springs and requested her to follow instructions in your letter which accompanies same and return it to you promptly. Mr. Carrothers' address is Surrey, Cal., and as soon as you receive the mortgage back from Mrs. Saxon will you kindly address a letter to Carrothers requesting him to come in and sign same and at the same time a note in conformity with the note in the mortgage and turn same over to Mrs. Saxon." The reply, made early in October, to

this letter by plaintiff's attorney was that he had written to Carrothers, but that Carrothers had not appeared. He added: "Of course, we are holding the Buckeye Manufacturing Company until the note and also the chattel mortgage are fully completed." Considerable correspondence followed between defendant and the plaintiff. Carrothers never did appear and sign the documents. Plaintiff's attorney at all times insisted in his letters to the defendant that he would refuse to accept the mortgage in the condition it was, but would insist upon the five hundred dollars being returned to the plaintiff. Defendant finally insisted on its part that it had fully complied with its agreement; whereupon this action was commenced. We have already indicated that there was some conflict between the testimony given by defendant's agent Burke and that given by the attorney for the plaintiff as to the circumstances relating to the matter of the execution of the chattel mortgage at the time the form was prepared by the attorney. The letters written by the defendant during the time that the matter was in the stage of active dispute indicated that it had not considered its duty at an end when it offered to the plaintiff the mortgage of Carrothers in its imperfect condition. However, we agree wholly with the contention of respondent as to the obligations assumed by the defendant under its agreement with the plaintiff. At the time the agreement was entered into respecting the loan of five hundred dollars to be made by the plaintiff to Carrothers, the defendant had the truck in its possession, it had not completed the sale to Carrothers and was wholly in a position to protect itself from loss. It assumed the duty voluntarily, in consideration that the plaintiff would make the five hundred dollar loan, of seeing to it that the plaintiff was protected by security in the form of a first chattel mortgage against the truck. The making of the mortgage was in the hands of the defendant, and, according to the testimony offered for the plaintiff, the only thing the latter's attorney did was to indicate a form of mortgage which would be satisfactory to his client. The receipt issued to the plaintiff when she delivered her check for five hundred dollars provided that the money should be returned to her in the event the loan was not made, and this condition was one which was clearly impressed upon the whole transaction, as shown by other evidence. There was no material dispute but that under the

agreement as made the five hundred dollars of Mrs. Saxon was not to be applied on account of the purchase by Carrothers of the truck from the defendant, unless Carrothers secured more cash to put with the money. If he had not secured the additional cash, there would have been no sale of the truck, and consequently there would be no transaction upon which the five hundred dollars of the plaintiff could properly be applied. Necessarily in that contingency it was understood that Mrs. Saxon should have her check returned. As it developed, however, Carrothers did raise the additional one thousand one hundred dollars, and the defendant got full payment for the truck. Did it on its behalf properly secure the plaintiff for her advancement in the way it agreed to do? Counsel for appellant argues that the mortgage as made by Carrothers was good in law and could be enforced. Assuming the correctness of this position, we do not think that the plaintiff was obliged to accept a mortgage executed in such an informal way as this one was, particularly as to the failure of Carrothers to sign the mortgage in the ordinary and usual place. There is no doubt that the note, being signed in the body of the mortgage, was a good note and enforceable; and yet in the ordinary and usual completion of such a mortgage transaction the mortgagee is given the original note separately and a copy thereof is embodied in the mortgage. We have said, and we repeat, that we think that, even though it be admitted that the mortgage as between the parties could be enforced by action (and counsel for appellant has some substantial authority sustaining such a position), the mortgagee was wholly justified in refusing to accept an instrument executed in a way so divergent from the common and ordinary method. She had a right to insist, as she did, upon the correction of the document, and the burden rested upon the defendant under its agreement to see that her request was complied with. We have called attention to the fact that the chattel mortgage was not acknowledged by the mortgagor. This, under the provisions of section 2957 of the Civil Code, would have prevented its recordation, and so deprived the plaintiff of the protection given her by the notice which such recordation would afford as against further encumbrancers or purchasers from Carrothers. The property involved was property peculiarly susceptible of being

transferred from one place to another and which could easily be disposed of or further encumbered.

Counsel for appellant insists that the court committed error in admitting the correspondence which passed between plaintiff's attorney and the defendant touching the matter of the execution of the mortgage. That correspondence was competent, material, and very pertinent to show the continued objection made by the plaintiff to the mortgage tendered her, and that she did not by any form of acquiescence accept the same as sufficient. The correspondence from the defendant in reply was competent to make a complete statement of the matters discussed and to show, by inference at least, that the defendant did not until very late in the course of the correspondence contend but that a duty still rested upon it to see that the mortgage was executed in form as required by the plaintiff. The court by its findings determined that the contract as made was as plaintiff had alleged it to be. Necessarily this conclusion excludes all notion or idea that the contract was of any other kind, or that the breach alleged to have been committed by the defendant was of any different kind than the affirmative findings showed it to be. It was therefore unnecessary to make particular findings as to certain matters touching the same issue and which were set forth in the answer made by the defendant.

We have examined all of the points presented by appellant from which it is argued that a reversal should be ordered, and we cannot concede that they possess the merit claimed for them.

The judgment and order are affirmed.

Conrey, P. J., and Works, J., *pro tem.*, concurred.